H. V. FOWLER *v.* JOHN G. McCARTNEY et al.

The enrolment act of 1844 (Hutch. Code, 892, § 11) which provides that, " all liens of judgments, decrees, and forfeited forthcoming bonds, shall cease and determine, as against purchasers or creditors of the debtor or debtors, unless the same shall be enforced by execution within five years from the date of the entry and enrolment of the same on the judgment roll under the provisions of this act:"—*Held,* that the word "purchasers" as used in that statute must be understood in the sense it is used in the statute of frauds, which means *bonâ fide* purchasers without notice of the fraud.

The lien of the judgment creditor, in such a case, can only be defeated under the statute where a sale of the property is made to a *bonâ fide* purchaser.

As a general rule, fraud is sufficient of itself to confer jurisdiction upon a court of equity; for a judgment creditor can resort to that court, not only for the purpose of subjecting property which cannot be reached by execution, but to remove obstructions to a fair sale of property liable to execution at law:— *Held,* in such a case the judgment creditor has a right to have the property subjected to satisfy his debt, in such a manner that it will bring its fair market value.

Equity avoids both a multiplicity of suits and a circuit of action touching the same matter; and whereas in this case, the administrator and heirs of the deceased, as well as the terre-tenant, are all made parties defendant to the bill, the parties can make any defence for a failure to revive the judgment which they could have made on *scire facias* to revive the judgment at law.

IN error from the northern district chancery court at Holly Springs; Hon. Henry Dickinson, vice chancellor.

A. V. Fowler obtained a judgment in the circuit court of Lafayette county, on the 9th of April, 1846, and which was enrolled on the 17th of August, 1846, based on a promissory note of the date 13th of December, 1836, against John G. Mc-Cartney, upon which judgment several executions issued, and the last one of date 28th of February, 1848, all of which were returned *nulla bona.* That on the 17th of November, 1851, said McCartney filed for record a deed from John M. Driver, of the date 2d day of April, conveying to him the south-west quarter of section number three, township number seven and range number one west, lying in Lafayette county, Mississippi.

That this was all the land owned by said McCartney in this

43*

State. That he occupied and cultivated this land until his death, which occurred on the 1st of October, 1852.

That John G. McCartney, who was the son of the defendant in said judgment, on the 12th day of October, 1852, filed for record in the probate clerk's office of Lafayette county, a deed of the date 23d of December, 1850, acknowledged the 3d day of November, 1851, conveying said land by the father to his said son. The consideration expressed in the deed was $5. That the father at the time of this conveyance was insolvent. That John G. McCartney, the son, conveyed said land to Denson Conway the defendant, which was filed for record in said clerk's office on the 15th of November, 1852.

That complainant had notice of none of said conveyances, until some time after they were filed for record.

The bill charges, that the conveyance from the father to the son was voluntary and without consideration, and was at the time of its execution intended by both father and son, to hinder, delay, and defeat complainant's judgment debt. That Conway purchased with a full knowledge of the existence of said judgment, and its being unsatisfied, also the character of the said conveyance from the father to the son, and the fraudulent purpose intended by its execution.

That Conway has not paid the purchase-money, and is not a *bonâ fide* purchaser.

The prayer of the bill is to declare the conveyances from the father and from the son fraudulent and void, and the land made subject to the judgment debt.

The bill was demurred to by defendants, and the demurrer sustained by the court below, and bill dismissed. To reverse which judgment Fowler prayed this writ of error.

*Howry* and *Hayes* for appellant.

1. That a judgment creditor, whose execution is returned *nulla bona*, is entitled to the aid of a court of equity in declaring void a conveyance made by his debtor to hinder, delay, and defraud his debt, and to subject the property thus conveyed to its satisfaction. *Coleman* v. *Reves et al.*, 2 Cushm. R. 636; *Mays* v. *Rose*, Freem. Ch. R. 50; 2 Johns. Ch. R. 50; 14 Ib. 493.

2. That in cases where sale has been made at law, the purchaser at execution sale, when proceeding in equity to set aside a prior conveyance fraudulently made by the judgment debtor, stands in the place of the judgment creditor, and is entitled only to the relief that would have been awarded to the creditor, had he, without execution sale, proceeded in like manner and for a similar purpose. Freem. Ch. R. 703; 2 Johns. Ch. R. 50; 14 Ib. 493.

3. That there is no remedy at law. 1. The legal title to the property is not in the judgment debtor. *Hopkins* v. *Cary et ux.*, 1 Cushm. R. 59; *Goodwin* v. *Anderson*, 5 S. & M. 730. 2. By no original proceeding at law can a creditor set aside a fraudulent conveyance.

4. One of the most common grounds of equity jurisdiction is fraud.

Courts of law in some cases exercise concurrent jurisdiction. An election is given in such cases to the party about to engage in litigation which forum he will select. 4 S. & M. 155.

5. That the judgment lien is in full force, where there is not a *bonâ fide* purchaser. Hutch. Code, 892, § 11.

6. It is not required that the judgment should have an existing lien. *Hadin* v. *Spader*, 20 Johns. Ch. R. 554; *Egbert* v. *Pemberton*, 7 Ib. 208.

7. That it is not necessary to revive the judgment against the heirs of the debtor. *Ferguson Heirs* v. *Crowson*, 3 Cushm. R. 430.

It is charged in the bill, and confessed to be true by the demurrer of defendants, that McCartney conveyed to his son, without consideration, the land sought to be subjected to the judgment debt.

That the conveyance was intended by the father and son to hinder, delay, and defeat complainant's debt. That Conway purchased with a full knowledge of these facts, and he has never paid the purchase-money, and he is not a *bonâ fide* purchaser.

Such a conveyance is declared fraudulent by our statute.

*H. A. Barr* for appellees.

The enrolment act of 1844 says that all judgment liens, as to purchasers, shall cease after five years from the date of the enrolment.  Hutch. Co. 892, § 11.

Fraudulent conveyances will be set aside at the instance of creditors by courts of equity, under proper proceedings for that purpose; but it is settled beyond all controversy, that where a judgment creditor seeks the aid of a court of equity as to land, he must show that his judgment is a lien upon the land.  See 1 Story, Eq. § 375; 2 Ib. § 1216 b.; 1 Fonbl. Eq. B. 1, Ch. 4, § 12; *Coleman* v. *Croker*, 1 Ves. Jr. 160; *Bean* v. *Smith*, 2 Mason, R. 282; *Jackson* v. *Caldwell*, 1 Cow. R. 622; *Brinkerhoff* v. *Brown*, 4 Johns. Ch. R. 676.

In the case last cited, Chancellor Kent says that he finds the rule to have been long and uniformly established, that if a judgment creditor seeks aid in a court of equity, as to real estate, he must show a judgment creating a lien upon such estate.

Counsel for the plaintiff have cited *Haden* v. *Spader*, 20 Johns. R. 554, and *Egbert* v. *Pemberton*, 7 Ib. 208, to show that it is not necessary that there should be a lien.  These cases assert no such doctrine.  The judgments in both cases had liens, and besides land was not involved in either of them.

2. The plaintiff had a complete remedy at law.  Counsel for the plaintiff have cited *Hopkins* v. *Cary et ux.*, 1 Cushm. R. 59; and *Goodwin* v. *Anderson*, 5 S. & M. R. 730, on this point.  In both of these cases the judgment debtors never had a legal title to the lands in controversy.  Their titles were equitable.  Here the judgment debtor was clothed with a legal title, when the judgment was rendered, and for years thereafter.

The cases of *Coleman* v. *Reves et al.*, 2 Cushm. 636; *Mayes* v. *Rose*, Freem. Ch. R. 703; and *Sands* v. *Hildreth*, decided in 2 Johns. Ch. R. 50, and affirmed in 14 Ib. 492, are cited to show that a judgment creditor, whose execution is returned *nulla bona*, is entitled to the aid of a court of equity in cases like this.  The case in 2 Cushm. determines the very reverse.  The court says a creditor can only invoke the aid of a court of equity to collect his judgment, when the estate is equitable, or the remedy at law obstructed.  It cannot be said that the plaintiff's remedy at law was obstructed in this case, for taking the allegation of

Fowler v. McCartney et al.

the bill to be true, and admitting, as he contends, that he has a lien as against Conway, he could have sold the land under an execution, and the purchaser would have acquired a good legal title, upon which he could have maintained an action of ejectment. The other cases have no application to judgment creditors. They were all cases in which lands had been sold under execution, and the purchasers under execution filed bills to set aside fraudulent conveyances of the judgment debtors.

3. The judgment was not revived against John G. McCartney as the heir at law of the judgment debtor, or Conway as terre-tenant. When a new party is to be benefited, or charged by the execution of a judgment, a *scire facias* is necessary to make him a party. The bare existence of the liability does not supersede the necessity of a *scire facias* to bring in the heir, when satisfaction of a judgment is intended to be made out of the land. And that a terre-tenant must be made a party by *scire facias* is as well settled, as that such a proceeding is necessary against the heir, and depends upon the same reason, namely, his interest in the land. 2 How. R. 604, and 607, and the authorities there cited.

*Ferguson Heirs* v. *Crowson*, 3 Cushm. R. 430, is relied upon by counsel for the plaintiff to show that a *scire facias* was not necessary. That case only determines that a *scire facias* is not necessary to revive a judgment against the heir, when the creditor did not intend to resort to an execution, but only sought to reach an equitable interest in lands. Here an effort is made to reach land to which the judgment debtor, and those claiming under him, have a legal title.

Mr. Justice FISHER delivered the opinion of the court.

This is an appeal from a decree of the vice chancery court at Holly Springs, sustaining a demurrer on behalf of the defendants to the complainant's bill.

The bill alleges that the complainant on the 9th day of April, 1846, recovered a judgment in the circuit court of Lafayette county, against one John McCartney, for the sum of $1,429.87, for debt, damages, and costs; that said judgment is founded on a promissory note made by the said McCartney on the 13th day

of December, 1836, and payable the 1st of January, 1839; that said judgment was duly enrolled in the clerk's office of said county on the 17th day of August, 1846; that executions issued thereon at different times, and were returned by the sheriff of said county "no property found;" that on the 2d of April, 1844, the said McCartney became the owner of a certain quarter section of land situate in Lafayette county; that the sheriff, supposing the same to be exempt from execution, refused to levy on the same; that said McCartney continued in the possession and enjoyment of said land until his death, which occurred in the month of October, 1852; that after his death, his son John G. McCartney filed a deed from his father to said land, in the office of the clerk of the probate court of said county, by which deed it appears that the land was conveyed to the son on the 3d day of November, 1851, for the consideration of the sum of five dollars; that on the 15th of November, 1852, the defendant, Denson Conway, filed a deed in said office, conveying the said land to him by the said John G. McCartney, and purporting to be upon the consideration of the sum of $1,300.

The bill specially alleges that the conveyance from the father, John McCartney, to the son, John G. McCartney, was not only voluntary, but was made with a view to hinder, delay, and defraud the creditors of the father, and especially the complainant; that the said Conway was fully informed as to the facts, purposes, and object of the father in making, and of the son in accepting said deed, as well as of the existence of the complainants' judgment; that although the conveyance to the said Conway purports to be upon the consideration of the sum of $1,300, as above stated, he has not in fact paid the said sum or any part thereof.

These are the material allegations of the bill to which the demurrer was sustained in the court below, and the question now is, whether this judgment is correct.

It is first insisted that the lien of the judgment had expired as to the defendants under the operation of the eleventh section of the enrolment law of 1844, Hutch. Co. 892, before the death of the judgment debtor, and that therefore the defendants hold the land discharged from the judgment lien; second, that the

complainant had a full and unembarrassed remedy at law; and third, that the judgment should have been revived at law before proceeding in equity.

These several questions will be considered in the order in which they were stated.

The section of the statute above referred to, is in these words, namely: "all liens of judgments, decrees, and forfeited forthcoming bonds, shall cease and determine, as against purchasers or creditors of the debtor or debtors, unless the same shall be enforced by execution within five years from the date of the entry and enrolment of the same, on the judgment roll under the provisions of this act." The point made on this statute is, that the five years having elapsed, counting from the date of the enrolment of the judgment, and the defendants occupying the attitude of purchasers from the judgment debtor, the lien as to them had, in the language of the statute, ceased and determined. To this it is replied by opposing counsel, that the word "purchaser," as used in this statute, must be understood in the sense in which it is used in the statute of frauds, in which it is held to mean a *bonâ fide* purchaser, without notice of the fraud. This view of the law receives in the fullest manner our entire assent. The conveyance by the father to the son, was not only without consideration which could uphold it against the judgment creditors of the former, but as the bill charges, it was made with a view to hinder, delay, and defraud the complainant in the collection of his judgment. This allegation being admitted by the demurrer, there is no room for debate, confining the transaction exclusively to the father and son. The case is none the less clear, extending it to the defendant Conway. He purchased, as the bill alleges, with full notice of the want of consideration and fraudulent purpose of the conveyance to his vendor, John G. McCartney, and in addition to this fact, has not paid the purchase-money. These facts being true, he does not appear before the court as a *bonâ fide* purchaser, and as such entitled to its protection, but to some extent, at least, as a participator in the fraud of his vendee, and as aiding him in the accomplishment of his fraudulent object.

In this connection it is urged, that to entitle the complainant

to maintain his bill, it should be shown that his judgment lien was, at the time the bill was filed, in full force as to the land, and numerous authorities were cited to sustain this position. Without calling in question the general correctness of the rule, there is a successful answer which may be given to the position as assumed by counsel, and that is, that the lien here is, in point of fact, in full operation. As has been seen, the lien could only be defeated under the operation of the statute by a *bonâ fide* purchase of the land by the defendants. No such purchase has been made, and consequently the lien, as originally created, has not ceased or determined, as supposed by counsel.

Upon the second point, a few remarks will suffice. As a general rule, fraud is of itself sufficient to confer jurisdiction upon a court of equity. Judgment creditors can resort to that court, not only for the purpose of subjecting property which cannot be reached by execution to their judgments, but to remove obstructions to a fair sale of property, liable to execution at law. It comes with a bad grace from the parties claiming under these deeds, to say that they are so utterly worthless on their face, as not to affect the value of the property if offered by the judgment creditor for sale, under legal process; or, if not, to deter prudent persons from bidding for the property. The creditor has not only a right to have the property subjected to the payment of his judgment, but to have it subjected in such manner that it will bring its fair market value. Of this, the defendants have no right to complain.

The third and last objection is, that the judgment should have been revived by *scire facias* before proceeding to collect the judgment.

If the complainant were seeking to enforce his judgment by execution at law, it would certainly be necessary to revive it against the administrator or heirs, according to the nature of the property sought to be subjected, or the object of a revivor.

But in the present case, the administrator, the heirs and terre-tenants, are all made parties defendants to the bill. Equity avoids both a multiplicity of suits, or circuity of action touching the same matter. The parties can make to the bill any defence which they could make on a *scire facias* to revive

the judgment at law, and they certainly cannot complain of such rule, as they are only required to litigate under it, in one, instead of two courts, as insisted by counsel.

Decree reversed, demurrer overruled, cause remanded, and defendants required to answer in sixty days after the decree shall have been certified and filed in the court below.