JOHN FLEMING ET AL. *v.* GEORGE GRAFTON.

1. FRAUDULENT CONVEYANCE.  *Bona fide purchaser.*
   The creditor of a mortgagee with notice from a fraudulent grantee, to whom said mortgagee has assigned as collateral the debt and mortgage, is not a *bona fide* purchaser, and whatever infirmity attached to the debt or security as against his assignor can be set up against such creditor.

2. SAME.  *Limitation of action.  Concealed fraud.*
   Where a fraudulent conveyance is recorded, and the circumstances are public, so that the judgment creditor has the means of finding out the character of the transaction, the doctrine of concealed fraud does not apply so as to prevent the running of the Statute of Limitations.

3. SAME.  *Judgment lien lost by limitation.  Effect thereof.*
   After the creditor has lost his judgment lien by the lapse of seven years, as prescribed by the statute, a court of equity will decline to aid him to set aside a fraudulent conveyance of his debtor's land.  *Partee* v. *Mathews*, 53 Miss. 140, affirmed.

4. CHANCERY.  *Creditor's bill.  Equitable and legal assets.*
   There are two classes of cases in which a court of chancery relieves the creditor: first, where he proposes to appropriate equitable assets;

and, second, where the property is subject to final process at law, but he seeks the aid of equity to remove some fraudulent or inequitable obstruction, interposed to prevent or embarrass a sale. In the former case, the creditor must show a judgment and execution returned *nihil;* in the latter, equity will intervene in aid of the legal right, without issue and return of execution, where the lien of the judgment subsists.

5. Same. *Lien.*

One who brings his bill in chancery to vacate a fraudulent conveyance of his debtor's land must show that he has a lien, by judgment, if the statute gives such lien; or, if it arises from the execution, he must show that one has been issued; if from a levy of the writ, one must have been made.

6. Same. *Limitation of action. Case in judgment.*

Land was conveyed, on April 2, 1866, by J. to S., from whom, by mesne conveyances in 1867, it passed to F. On Oct. 13, 1866, G. recovered judgment, upon a demand prior to April 2, 1866, against J., which was duly enrolled, and executions issued from time to time, without any levy, until July 16, 1874, when G. filed his bill to vacate all the conveyances, as fraudulent, and to subject the land. *Held*, that the complainant, at the time of filing his bill, had no lien, the one which pertained to the judgment having expired ; that, although he had the right to issue execution, the writ in the officer's hands did not revive the lien; and that the bill, therefore, could not be maintained.

Appeal from the Chancery Court of Adams County.

Hon. E. H. Osgood, Chancellor.

George Grafton filed this bill on July 16, 1874, against John Grafton, William Sojourner, John Fleming, surviving partner of Fleming & Baldwin, and Sarah Richards, to subject certain land therein described to the payment of a judgment rendered on Oct. 13, 1866, against John Grafton. John Fleming and Mrs. Richards pleaded the Statute of Limitations of seven years, and claimed to be innocent purchasers for valuable consideration without notice. In order to avoid the bar of the statute, the complainant charged concealed fraud.

The facts are fully stated in the opinion of the court. To prove the allegations that the deed from John Grafton to Sojourner, and the mortgage from Sojourner to Fleming & Baldwin, were merely colorable, entirely without consideration, and devised to defraud the complainant, the latter took the depositions of John Grafton and Sojourner. The defendants

moved to suppress them, on the ground that the parties could not testify to impeach their own deeds. The motion was overruled ; and from a decree for the complainant, the defendants, Fleming and Richards, appealed.

*Carson & Shields*, for the appellants.

1. Fleming & Baldwin were certainly under the protection of the principle of *bona fide* purchasers for a valuable consideration, inasmuch as they advanced supplies on the faith of the mortgage given by Sojourner. *Harney* v. *Pack*, 4 S. & M. 229 ; *Ewing* v. *Cargill*, 13 S. & M. 79 ; *Johnston* v. *Dick*, 27 Miss. 277 ; *McCutchen* v. *Miller*, 31 Miss. 65 ; *Wooten* v. *Clark*, 23 Miss. 75 ; *Brown* v. *Bartee*, 10 S. & M. 268. Thus Mrs. Richards, even had she known of the fraud in the deed from John Grafton to Sojourner, can protect herself under the *bona fides* of Fleming & Baldwin. *A fortiori* is she protected, when she never heard of the dishonesty of John Grafton and his son-in-law, Sojourner, until they were allowed to proclaim it. 48 Miss. 492 ; 43 Miss. 265 ; 46 Miss. 489.

2. On the question of limitation, we hold that the lien of the George. Grafton judgment is dead, so far as this land is concerned. Code, §§ 2153, 2159, 2174 ; *Mandevill* v. *Lane*, 28 Miss. 312 ; *Rupert* v. *Dantzler*, 12 S. & M. 697 ; *Emanuel* v. *Jones*, 12 S. & M. 473 ; *Heizer* v. *Fisher*, 13 S. & M. 672 ; *Beirne* v. *Mower*, 13 S. & M. 427 ; *Kilpatrick* v. *Byrne*, 25 Miss. 571 ; *Walton* v. *Hargroves*, 42 Miss. 18 ; *Dozier* v. *Lewis*, 27 Miss. 697 ; *Edwards* v. *McGee*, 31 Miss. 143 ; *Pollard* v. *Eckford*, 50 Miss. 631 ; *Palmer* v. *Jones*, 50 Miss. 657 ; *Vick* v. *Chewning*, 31 Miss. 201.

In order to avoid the bar, the complainant invokes the doctrine of concealed fraud. But that doctrine has no application to the facts of this case. Code, §§ 2148, 2158, 2174 ; *Edwards* v. *Gibbs*, 39 Miss. 166 ; *Cook* v. *Lindsey*, 34 Miss. 451 ; *Buckner* v. *Calcote*, 28 Miss. 432, 595 ; *Wilson* v. *Ivy*, 32 Miss. 233. Nor does the successive issuance of executions help the matter. The execution must be issued to collect the money, and not for the naked purpose of avoiding the bar, and keeping alive the judgment. *Harris* v. *West*, 25 Miss. 156.

3. The learned counsel then reviewed the testimony at length, contending that the Graftons being brothers, and

Sojourner the son-in-law of John Grafton, after finding that it would be more profitable to pay the judgment of George Grafton, which did not bind the homestead, than the mortgage to Fleming & Baldwin and Mrs. Richards, which did, had abandoned the scheme of defrauding George Grafton, and set about defeating the claim of Mrs. Richards, who was an innocent purchaser without any notice of the attempted fraud on George Grafton.  And, on the facts, counsel contended that the fraud was not proved ; that the only testimony to impeach the deed was that of Grafton and Sojourner themselves ; that they would not be heard to proclaim their own infamy ; that their depositions should have been suppressed on motion, because a party cannot impeach his own deed by swearing to his own fraud.   Roberts on Frauds, 442 ; *Walton* v. *Shelley,* 1 T. R. 296.

*Potter & Green,* on the same side.

*M. Green,* on the same side, argued the case orally, and filed the following brief : —

1. He argued the facts at length to show that Fleming & Baldwin were *bona fide* purchasers for value without notice ; citing, to show that possession of realty by the grantor after the grant was not a badge of fraud, Bump on Fraudulent Conveyances, 160, 161 ; 8 Mich. 395.

2. One who receives a mortgage debt and mortgage, as collateral security, can be a *bona fide* purchaser for value.  1 Daniels on Negotiable Instruments, 616.

3. Although, as against the assignee of a debt past due, equities are admitted, still that the mortgage debt is past due does not let in equities against the mortgage itself.   Nothing save notice of its fraudulent character will defeat the mortgage.

4. Failure to serve process on amended bill makes the decree only voidable.   23 Miss. 154.   It cannot be attacked collaterally.   6 S. & M. 179 ; 24 Miss. 517.

5. A bill by a judgment creditor to subject legal assets to the satisfaction of a *fieri facias* by cancellation of fraudulent conveyances, is barred after seven years from rendition of the judgment, the lien being barred in that time.   The jurisdiction in equity to subject legal assets fraudulently conveyed is based

on the equitable estate in the creditor, existing by virtue of
the judgment lien. Relief is not given on account of the juris-
diction of frauds. This jurisdiction is admitted; yet only
those who are affected by the fraud can complain of it. Hence
the doctrine that only those having an equitable estate in the
thing can complain; and the *lien* is this equitable estate. At
common law, a judgment was not a lien on realty until *elegit*
sued out. Hence Lord Cottenham, in *Neate* v. *Duke of Marl-
borough*, 3 Myl. & Cr. 407, upon a full review of the authori-
ties, denied relief to a judgment creditor, because *elegit* had
not issued.

By statute, a judgment is a lien in this State for seven years
from rendition. For that period a judgment creditor has an
equitable estate in the legal assets of the debtor. After that
period he has no estate, for the lien is barred, and hence a bill
will not lie. *Partee* v. *Mathews*, 53 Miss. 140; *Trask* v.
*Green*, 9 Mich. 358; *Crippen* v. *Hudson*, 13 N. Y. 161; *Tap-
pan* v. *Evans*, 11 N. H. 311, 327; 2 McCord Ch. (S. C.) 576;
27 N. Y. 246; 4 Sand. (N. Y.) 278; 1 Stockt. Ch. 36; 41
Miss. 139; 1 Story Eq. Jur. 462, 465; 14 Ill. 271; 12 Minn.
145.

The judgment may be enforceable by *fieri facias*, and the lien
be barred, the statutes limiting each being different. Free-
man on Judgments, §§ 392–394; *Partee* v. *Mathews*, 53 Miss.
140. Hence, although the judgment was enforceable, a bill
would not lie to reach legal assets to satisfy the *fieri facias*
after seven years from rendition of judgment. This bill is to
subject *legal* and not equitable assets. As to the latter, a dif-
ferent rule·prevails.

*T. O. Baker* and *W. T. Hewett*, for the appellee, filed a brief
which the reporter has been unable to obtain.

*Nugent & McWillie*, on the same side.

*W. L. Nugent* argued the case orally.

SIMRALL, C. J., delivered the opinion of the court.

The facts on which the questions that we are to consider
arise are these: On Oct. 13, 1866, George Grafton recovered
judgment for a large debt against John Grafton, which was
duly enrolled. On the 2d of April preceding, John and wife

conveyed the lands in controversy to Sojourner. On Jan. 1, 1867, Sojourner mortgaged the property to Fleming & Baldwin, to secure a debt due to them from his grantor, and also for plantation supplies. In January, 1868, Fleming & Baldwin assigned the debt and mortgage to Sarah Richards, as collateral security. In January, 1873, this mortgage was foreclosed, and at the sale Fleming became the purchaser. Executions were issued from time to time on the judgment, without result, until July 16, 1874, when George Grafton brought this bill in chancery, to set aside the conveyance to Sojourner, his mortgage to Fleming & Baldwin, and the purchase by Fleming at the foreclosure sale, on the ground that all these acts and conveyances were collusive, and contrived to defraud the complainant.

It is argued on behalf of Mrs. Richards, the assignee of the debt and mortgage, that she is an innocent purchaser, in no wise connected with the dealings between Grafton, Sojourner, and Fleming & Baldwin, and that, however those transactions may be tainted with fraud, she ought not to suffer or be prejudiced. Mrs. Richards, the creditor of Fleming & Baldwin, doubting their solvency, applied to them for security. To meet her wishes, they turned over to her, as collateral, the debt and mortgage. She became the mere assignee of the evidences of debt, with a right to enforce the mortgage as a security. She did not thereby become the purchaser of the property. Moreover, she is not a *bona fide* purchaser. Since she paid no money, parted with no valuable thing, incurred no new obligation, extinguished no debt, it would follow that whatever infirmity attached to the debt or the security, as against her assignor, could be set up against her. It is not pretended that the debts due from Grafton and Sojourner were not *bona fide* liabilities. The *mala fides* in Fleming & Baldwin begins in an effort to obtain an advantage over George Grafton (who had already brought suit against John), by securing the past indebtedness of John, and enabling him and his son-in-law Sojourner to hold and enjoy the property, so that George could not collect his debt.

It has been urged by counsel that the defendants below could not maintain their plea of the Statute of Limitations,

because of the fraud which concealed from the complainant his rights. It is not perceived, precisely, the applicability of the proposition of law to the facts. The conveyance by John Grafton to his son-in-law was recorded. So was the mortgage to Fleming & Baldwin. It was open to the complainant to inquire whether Sojourner had the means to make so large a purchase, and to observe for himself, or make inquiries as to the manner that the property was held, controlled and used after the conveyance to Sojourner. These circumstances were public. If he has lost by failure to act in proper time, it is referable to his own negligence.

Is the remedy of the complainant cut off against the property by the statute fixing a limitation of seven years to the continuance of the judgment lien? It was held at this term, in the case of *Partee* v. *Mathews*, 53 Miss. 140, that a court of equity would decline to aid the creditor, after he had lost his lien by expiration of seven years from the date of the judgment, that being the time that the statute preserves it.

We have been invited, in able arguments, oral and written, to reconsider the doctrine laid down in *Partee* v. *Mathews*, and the prior decisions in this court on which that case rests, and to overrule them. The principle announced in those cases is, that a creditor who brings his bill in chancery to set aside a fraudulent conveyance of the debtor's land must show that he has a lien on the land by judgment, or in some other form. They were all suits by judgment creditors, and the discussions and conclusions of the court were directed exclusively to the rights of such creditors against the property which had been thus conveyed.

These decisions are impugned, because they rest, as argued by counsel, on a misconception of the ground or reason on which the relief is granted; the mistake being in the assumption, as it is said, that the lien is a necessary constituent of the creditor's equity. The true and controlling consideration for relief, suggested by counsel, is the original and inherent jurisdiction in the court, because of the fraud of the debtor.

But a court of equity will never interfere to break up a contract, good between the immediate parties, at the suit of a stran-

ger to it, unless he shows that he has some specific right to the property, the subject of the contract, superior to that which passed by the conveyance. The mere fact that he is a creditor is not enough. He must also be a creditor with a *specific* right or equity in the property. That, we propose to show, is and must be the title which he brings into a court of equity, when he seeks relief touching property liable to execution.

But there are two classes of cases in which a court of chancery relieves the creditor. The distinction between them is broad and marked, and the facts which make up the equity of the creditor are very different, and so is the reason on which the jurisdiction is based. One class is, where the creditor comes to obtain satisfaction of his judgment out of the property of his debtor, which cannot be reached by execution at law; that is, where he proposes to appropriate equitable assets to the satisfaction of his judgment. The other is, where he has a right at law, the property being subject to final process, but he seeks the aid of a court of equity to remove some obstruction fraudulently or inequitably interposed to prevent or embarrass a sale under execution.

In the former case, it has been uniformly held by the courts in England and in this country, that the creditor must show, as a condition on which he will be relieved, that he has pursued his remedy at law fruitlessly; that is, that he recovered judgment, and had execution returned *nihil*. *Balch* v. *Wastall*, 1 P. Wms. 445; *Cuyler* v. *Moreland*, 6 Paige, 273; *Bethell* v. *Wilson*, 1 Dev. & Bat. Eq. 610; *Neate* v. *Duke of Marlborough*, 3 Myl. & Cr. 407.

It is because there can be no levy, or right of lien, on the chose in action, or other equitable assets, that a court of equity lays hold of it and applies it to the judgment. The right to exert the jurisdiction attaches on the fact that there is no property that the execution will reach. But the filing of the bill, after a return on the legal process of *nihil*, gives to the creditor a *specific lien*, and a preference over all other creditors. *Edgell* v. *Haywood*, 3 Atk. 352, 357.

The inquiry which we propose to make is, in what circumstances the court will relieve in the second class of cases; that is, what constitutes the right of the judgment creditor, when

he seeks relief against a fraudulent conveyance. On what precise ground does the court exert its jurisdiction?

In *Smith* v. *Hurst*, 10 Hare, 30, 43, it was said by Vice-Chancellor James that the "rights of judgment creditors are, as I conceive, purely legal rights, and the interposition . . . in their favor rests . . . upon the principle, as I apprehend, of aiding the legal right." "The province of this court is to aid, and not to supply or to extend, the legal right." An effectual mode of aiding the creditor is to put out of the way the covinous conveyance. In the case last quoted, the objection to relief, so far as the "freehold estates" were concerned, was sustained because the judgment creditor had not sued out an *elegit*. The reasoning is, that in any case the creditor must show by his bill that he has proceeded to the extent "necessary to give him a complete title." If he is in pursuit of equitable assets, that showing has been made by the judgment and return on execution of *nihil;* but if the aid of the court is sought to reach freehold estate, the title becomes complete by the issuance of the *elegit*, "but it is not necessary to procure return." The reason why the issuance of the *elegit* was necessary, was because that writ gave the creditor a specific right which the judgment did not give, and the court would lend its aid to remove the fraudulent obstruction.

In *Neate* v. *Duke of Marlborough*, 3 Myl. & Cr. 417, s. c. 14 Eng. Ch. Rep. 418, the Lord Chancellor inquired into the foundation of the jurisdiction. His reasoning is, that the act of Parliament, 13 Edw. I. c. 18, gives the creditor the *elegit*, to put him in possession of a moiety of his debtor's lands. The creditor comes into equity, not to obtain a greater benefit than the law gives him, but to have the same benefit, by the removal of the impediment out of the way. "Suppose," says his lordship, "he never sues out the writ, . . . is this court to give him the benefit of a lien to which he has never chosen to assert his right?" "This court is lending its aid to the legal right." The right attaches by virtue of the *elegit* under the act of Parliament, and it would not be correct to say that "the creditor obtains a *lien* by virtue of his judgment."

In the well-considered case of *Webster* v. *Clark*, 25 Maine, 313, 315, the inquiry was, under what circumstances the court

would assist the judgment creditor to displace a fraudulent con-
veyance. After referring to the doctrine as settled in England,
especially 9 Simon, 60, that where freehold estate was in ques-
tion there must be an *elegit* issued, the court applies that prin-
ciple to the laws of Maine, and with this result: " But in this
State, where the judgment does not create a *lien* upon the real
estate of the debtor, the principle established in all these cases
would require that the creditor should make a levy upon the
real estate of his debtor, if he would have the assistance of a
court of equity,'' to set aside a fraudulent conveyance. A court
of equity does not pursue an original and independent course of
its own, but affords auxiliary aid to give efficiency to the legal
remedy. ·

In Wisconsin, the statute, like ours, makes the judgment a
lien. In *Cornell* v. *Radway*, 22 Wis. 260, 263–265, the court
considered the point made by the defendant, that the fraudu-
lent conveyance could not be assailed, because the creditor
had not exhausted his remedy by an issuance of execution and
return of *nulla bona*, and, after stating that such is the well-
settled rule where the creditor resorts to chancery to subject
equitable assets, declares that this bill was not brought for
that purpose. But, inasmuch as the judgment by statute was
a *lien* upon the land, it followed that, without the issuance and
return of execution, the creditor could attack the conveyance,
as a fraudulent obstruction to an adequate remedy at law. To
the same effect is *Gates* v. *Boomer*, 17 Wis. 455.

In Illinois, in *Stone* v. *Manning*, 2 Scam. 530, 534, the
same doctrine is explicitly recognized. If the *lien* arises from
the issuance of execution, then the bill must aver that it was
issued ; otherwise, no title is shown to the assistance of the
court to get rid of the fraudulent conveyance. So, in principle,
is *Eppes* v. *Randolph*, 2 Call, 153.

The Supreme Court of the United States, in *Jones* v. *Green*,
1 Wall. 330, 332, states that the ground of the jurisdiction rests
on the fact that the creditor has acquired a *specific lien* on the
property (in that case by the levy of the execution), but that
the fraudulent conveyance presented a hindrance which pre-
vented a sale at a fair price. The relief is in aid of the law,
by displacing the obstruction, to enable the creditor to obtain
a full price for the property.

We have thus seen that the authorities outside of this State agree, that, before the creditor can obtain satisfaction in equity out of equitable assets, he must have pursued to the end his legal remedy, by recovery of judgment, and return of *nihil* on his execution. In our books are *Farned* v. *Harris*, 11 S. & M. 366; *Brown* v. *Bank of Mississippi*, 31 Miss. 454, 458.

But where the property has been fraudulently conveyed, the court of equity will intervene in aid of the legal right, without issue and return of execution, when the lien of the judgment subsists. The cases in our reports are *Hilzheim* v. *Deane*, 10 S. & M. 556; *Berryman* v. *Sullivan*, 13 S. & M. 65; *Fowler* v. *McCartney*, 27 Miss. 509; *Snodgrass* v. *Andrews*, 30 Miss. 472; and *Vasser* v. *Henderson*, 40 Miss. 519, 520, where the former cases are collected and the rule distinctly announced.

Waiving the former adjudications of this court, as not concluding us by authority, if we were at liberty to consider the question as *res nova*, we should be constrained to hold that the judgment creditor must show a specific right, that is, a lien on the land, before he has established a title to relief in equity to displace the fraudulent conveyance. The adjudications of this court are in harmony with the authorities elsewhere. We therefore reaffirm the doctrine of the case of *Partee* v. *Mathews*, 53 Miss. 140.

Courts of equity are not ordinarily tribunals for the collection of debts: some special reason must be offered by the creditor, before they will extend aid to him. If he is a judgment creditor, he must show that he has a lien, — either by judgment, if the statute gives such lien; if it arises from the execution, he must show that one has been issued; or if it arises from a levy of the writ, that must have been made.

The complainant, at the time he filed his bill, had no lien, for that which pertained to the judgment had expired; and although he had the right to issue execution, the writ in the officer's hands did not revive the lien which was gone.

*The decree will be reversed, and judgment may be entered here dismissing the bill.*