## J. C. HALL *v.* J. B. GREEN, EXECUTOR, ET AL.

1. CHANCERY. *Bill to subject equitable assets. Knowledge of fraud. Bar of remedy. Case in judgment.*

   L., for the purpose of defrauding E., a minor, to whom he was indebted, sold his entire estate, and with the proceeds bought certain promissory notes made by his brother, S., and nominally transferred them to M., the wife of the latter, and who was insane. S., participating in the fraud, executed a deed on land which he owned to secure the payment of the notes, and at the same time verbally gave to L. one hundred acres of the land, and put him in possession of it, but without any written evidence of title. The land was sold under the deed of trust and nominally bought by M., on the 1st of March, 1870. On the 25th of May, 1873, E., through her guardian, recovered a judgment, in the Federal court, against L.; but it was not rendered in the county where the property is situated, and was never enrolled in that county. In a few years thereafter, L., S., and M. had all died; and thereupon the heirs at law of M. sold and conveyed the land to H. Several executions were issued upon E.'s judgment, and the last one was returned, as having been levied on a part of this land, but that was after it had been sold to H. G. bought E.'s judgment, and, on the 28th of May, 1880, filed a bill against H. to subject the land to the judgment, as the equitable assets of L.'s estate. The only averment of knowledge of the fraud on the part of H. was that he knew S.'s wife was insane, and that S. owed her nothing. The bill was demurred to. *Held*, that the bill is not maintainable (1) because the charge of knowledge on the part of H. was not sufficient; and (2) because the time having elapsed in which the lien of the judgment would have expired if there had been any, a court of chancery will not enforce the judgment against equitable assets.

2. JUDGMENT. *Federal judgment. Effect of failure to enroll.*

   Under the statute of this State requiring the enrollment of judgments in order to create a lien, the judgment of a Federal court has no lien on property of the defendant situated in a county where the judgment was not rendered, and where it has not been enrolled.

APPEAL from the Chancery Court of Sharkey County.

Hon. W. G. PHELPS, Chancellor.

The case is stated in the opinion of the court.

*Buck & Clark*, for the appellant.

There was no lien on the property sought to be reached. More than seven years elapsed between the rendition of the judgment and the filing of the bill — and the lien of the judgment was gone notwithstanding the issuance of execu-

tions. *Buckner* v. *Pipes*, 56 Miss. 366. Also 2 Geo. 143; 2 Geo. 660; 54 Miss. 695.

The bill does not show that the judgment was ever enrolled in either Issaquena or Sharkey County, and this was necessary in order to make it a lien — certainly since the act of Congress of June 1, 1872, if not before. *Tarpley* v. *Hunter*, 9 Smed. & M. 310; *Bonnaffee* v. *Fisk*, 13 Smed. & M. 682; *Brown* v. *Bacon*, 5 Cushm. 589; *Ward* v. *Chamberlin*, 2 Black, 430; *Brown* v. *Pierce*, 7 Wall. 217.

As an effort to reach property not subject to execution at law, the bill is not maintainable for several reasons. The judgment was not a subsisting and operative one at the time of filling the bill, nor is it shown that the remedy at law had been exhausted.

The issuance of the *fieri facias* of July 15, 1873, which was returned seven days afterwards (though not legally returnable until first Monday in November), "*nulla bona* by order of plaintiff's attorney," was not a *bona fide* effort to enforce the judgment. *Harris* v. *West*, 25 Miss. 156.

The judgment therefore became dormant for the want of a *bona fide* execution within a year and a day after its rendition.

The utmost effect which can be given to any of the executions is to hold that they preserved the judgment as a debt against the defendant. As to Hall, the complainants stand as general creditors of Lacey Williams, without any lien upon, or specific equity in, the lands in his hands. Such a creditor cannot maintain a bill of this character. "The mere fact that he is a creditor is not enough. He must also be a creditor with a specific right or equity in the property." *Fleming* v. *Grafton*, 54 Miss. 86.

As against a *bona fide* purchaser for value, such right or equity must of necessity exist prior to his purchase, and cannot be acquired after. The levy of the *fieri faciases* of April 29, and May 1, 1880, gave the complainants no greater right against Hall than they already had, and were furthermore of

no effect because the judgment-debtor had never had a leviable estate in the property.

Let it be supposed, however, that Lacey Williams had been the legal owner of the lands now owned by Hall, and had on the first day of March, 1870 (the date of the trustee's deed to Mrs. Williams), made a conveyance of the same to Mrs. Williams with intent to hinder, delay, and defraud complainants. Would it be contended that complainants could maintain this bill, brought more than ten years after Mrs. Williams obtained her title, and more than seven years after they obtained their judgment?

It will not be overlooked that Mrs. Margaret Williams' title to the lands out of which satisfaction is sought accrued March 1, 1870 — more than ten years before the filing of the bill. The proposition of the bill is to establish a trust in those lands to the use of Lacey Williams and to make it available to satisfy complainants. This Lacey Williams could not have done at the date of filing the bill — aside from the principle that fraudulent conveyances are good between the parties and supposing that no other defence than the Statute of Limitations had been relied on. Certainly no greater right can exist in favor of one of his creditors — particularly one who has no judgment which would operate as a lien upon the lands if it stood with the legal title in his name.

It may be contended that though the remedy may be barred as to all other lands it is not as to the " one hundred acres on the Sampson Williams place," of which Lacey Williams is alleged to have died in possession. There is no description of this one hundred acres in the bill ; but waiving that point for the present, what does the bill show to be Lacey Williams' right to this land? It shows that he never had any title to it, nor any legal means of acquiring title. If it be true that he was interested in the deed-in-trust debt, either in pursuance of a fraudulent purpose to conceal his effects, or otherwise, the only equity of his creditors was to fasten a trust upon the land to the extent of his interest in the purchase-money. He could

have no right to any specific one hundred acres except through some contract with Mrs. Williams, available in law, and the bill shows none such. It needs no argument, we assume, to show that those who claim under and through a party cannot set up and enforce in his favor a contract which he himself could not rely upon. There is, therefore, no ground of relief as to the one hundred acres, even if it were sufficiently described.

Appellant is a *bona fide* purchaser — as appears by the bill — and as such is entitled to protection.

" The purchaser of the legal title is not bound to take notice of a registered lien or incumbrance on the estate created by any person other than those through whom he is compelled to deraign his title." *Bibb* v. *Harper*, 5 Geo. 472.

We have already shown that there was never any lien by judgment or execution because there never was any estate in Lacey Williams to which such a lien could attach. In cases of this character it is only by filing his bill that a creditor can acquire a lien, and as Hall had purchased before this bill was filed, he is of course unaffected by it.

There is language in the bill which was possibly intended to charge Hall with notice of complainant's alleged equity. But taking the allegations most strongly against the pleader, they do not negative what elsewhere appears that Hall is a *bona fide* purchaser for value. It does not appear that the alleged notice of complainant's rights was given before the purchase by appellant and " the facts," of which the appellants are said to have all along known, are only two, viz. : First. That Mrs. Williams was *non compos;* and second, that Sampson Williams was not indebted to her. These are not sufficient. *Hogan* v. *Burnett*, 8 Geo. 631.

*Nugent & McWillie*, for the appellees.

Mary Ellen Blakely was a minor ; and, although it does not appear from the bill when she attained her majority, there is nothing on the face of the pleadings to show that the Statute of Limitations has ever commenced to run against her, and this point of objection is disposed of. Sect. 2156 of the

Code of 1871 expressly provides that the limitation begins from the time the disability was removed. In addition to this, the case falls peculiarly within sect. 2158 of the same Code. There is, therefore, no such thing in the case presented, as a bar growing out of the lapse of time. The lien of a judgment confers a right to levy to the exclusion of adverse interests subsequently acquired. It is a new charge on the thing which can only be enforced by taking it in execution. 42 Miss. 18; 6 How. 530. As said in *Forth* v. *Farman*, 48 Miss. 536, 553, it is a right to a satisfaction of the judgment out of the property, superior and in preference of any adverse interests subsequently acquired; it is but a general lien and the judgment-creditor acquires thereby no higher or better right to the property of the debtor than the debtor himself had when the lien arose. This lien operates in favor of the creditor against the debtor, his assignees and purchasers under him, so as to defeat subsequent sales and encumbrances of any property to which the lien has attached. *Cohn* v. *Person*, 56 Miss. 360. When satisfaction cannot be obtained by legal process, a court of equity will lay hold of those interests in the property denominated equitable assets, and will subject them to satisfaction; but not upon the idea of a lien of the judgment, for in such case the creditor acquires a priority by filing the bill. *Partee* v. *Matthews*, 53 Miss. 146; *Fleming* v. *Grafton*, 52 Miss. 83.

But what estate did Lacy Williams have in the lands sold by Barnard under Sampson Williams' trust deed, if that sale passed title at all? The notes secured by the deed belonged to Lacey Williams, the deed of trust was intended to secure them. Mrs. Williams was a "figure-head" and was then wholly insane. The land was sold under the deed and conveyed to Mrs. Williams, who was wholly innocent of any sort of connection with the transaction. She paid nothing, gave no consideration for the notes, and has no earthly right to the property as against appellees. On the contrary, by the course of dealing, she stands only as a trustee holding the bare legal title, while

the entire beneficial interest was in Lacey Williams. There can be little doubt that, for the purposes of this suit, Lacey Williams had a complete equity in the lands sold by Barnard, — if we understand what the meaning of that term is. The lands were sold for his debt, purchased in for his debt, and the whole consideration passed from him. Had these been the only facts, and the title taken by Sampson to his wife, there could be no doubt of Lacey's right to have title vested in him. We know that the rule is that a conveyance or other executed contract made for the purpose of hindering, delaying or defrauding creditors is binding upon the grantor or his heirs. *Newell* v. *Newell*, 34 Miss. 385 ; *Shaw* v. *Millsaps*, 50 Miss. 380. But the rule is limited to those cases in which the grantee or donee is innocent of fraud. 34 Miss. 400, 401.

We take it here that Sampson Williams must be considered the real owner in the whole transaction. He prevailed upon his sister, Mrs. Gibbons, and she upon Lacey Williams. That Mrs. Williams' name was used without her knowledge, authority, or consent, while she was insane, cannot affect the case. Out of the whole transaction Sampson Williams becomes really owner of the whole property, and the party, through whose debt the lands were secured, was put in possession of one hundred acres of land without any title at all, the ultimate object, on the part of Sampson Williams, being to take the whole property. Considered in this light, the case of *Austin* v. *Winston*, 1 Hen. & M. 33, is a controlling authority. We refer to the opinion of Roane, justice, which presents fully the argument in favor of the proposition held that Lacey Williams had a complete equity to the lands sold under the trust-deed, and the right to recover them. He examines the ground of contrary decisions fully, and, in affording relief to Austin, said, speaking of Winston : " He hatched and brought to maturity a free and voluntary fraud to the injury of Winston's creditors ; to say the truth, he capped the climax of his iniquity by committing a double fraud toward his companion. * * * He has not even observed a maxim sacred among

thieves and felons, to be just and honest towards one another."
There are other cases on the point which we now quote for the
information of the court: *Jones* v. *Cone*, 5 Leigh, 557; *Griffin*
v. *Macauley*, 7 Gratt. 564; *Irons* v. *Reyburn*, 11 Ark. 382;
*Bellamy* v. *Bellamy*, 6 Fla. 104; *Freeman* v. *Sedwick*, 6
Gill, 41; *Cushwa* v. *Cushwa*, 5 Md. 53; *Quirk* v. *Thomas*, 6
Mich. 111; *Roman* v. *Mali*, 42 Md. 513; Bump's Fr. Conv.
442. See *Freelow* v. *Cole*, 41 Barb, 318.

There can be no question, we think, as to our right to reach
and subject the hundred acres of land to the payment of the
judgment. That belonged to Lacey Williams, who died in
possession. His equity to that was complete and perfect. It
was his property and through him ours, and the bill suggests
that a proper description will be ascertained and the bill
amended accordingly. Certainly this furnishes no ground for
a demurrer, which admits all the facts really essential to a
recovery. Besides, the bill suggests that the complainants
are entitled to have the lands conveyed to Mrs. Williams by
Williams, decreed to be the property of Lacey Williams,
and sold. If we are correct in our theory, this result must
follow, and we are entitled to be placed in Lacey Williams'
shoes so as to reach these lands. The great difficulty of
making a satisfactory sale, and the intervention of Hall, the
purchaser from Margaret Williams' heirs at law, are sufficient
of themselves to justify an appeal to the Chancery Court.

There is another point suggested which we notice. The
judgment was never enrolled in Sharkey County, and it is said,
did not constitute a lien. Of course, the lien by the levy of
the execution is not considered in reference to this point. Is
the proposition true?

It has been uniformly held by the Supreme Court of the
United States, that judgments of the Federal courts, from
the date of their rendition, are a lien upon the property of the
defendant whenever situated in the district, within the States
where they are rendered. This is the result of the process act
of 1828, which, as we understand the law, is to govern this case.

*Brown* v. *Bacon*, 29 Miss. 589; *Wayman* v. *Southard*, 10 Wheat. 1; *United States* v. *Halstead*, 10 Wheat. 51; *United States* v. *Scott*, 3 Woods, 334; *United States* v. *Duncan*, 4 McLean, 609.

But the very question in this case has been fully settled by the decisions of several Federal courts of acknowledged ability, and has been discussed by Mr. Taylor, in the *Central Law Journal*, p. 304.  *Carroll* v. *Watkins*, 1 Abb. U. S. 474; *United States* v. *Scott*, 3 Woods, 335; *Shaw* v. *Jones*, 2 McLean, 78.

The failure to enroll the judgment in this case cannot affect the question one way or the other.  And as the point presents a Federal question, as held by the Supreme Court of the United States, it would seem that the adjudications quoted should suffice to determine the matter definitely.

But it is said that Hall is a *bona fide* purchaser, and must be protected.  If we are correct in our idea that the judgment was a lien upon the Sampson Williams property, held in the name of his insane wife, without emolument, there can be no pretence of a *bona fide* purchaser.  The sale and purchase was wholly subservient to the law, and Hall took the lands *cum onere*.  If we are mistaken in this view, our rights could not be disposed of on demurrer.  The bill charges that Hall purchased " with full knowledge of the facts," and that all the parties have all along known that Margaret Williams was *non compos mentis*, and that her husband owed her nothing.  We think the allegations of the bill present a full answer to the criticism of adverse counsel.

CHALMERS, J., delivered the opinion of the court.

The complicated facts set forth in the bill, which is demurred to, may, for the purpose of adjudication, be compressed into the following statement.  In 1866, Lacey Williams, for the purpose of defrauding his minor niece, Mary Ellen Green, to whom he was largely indebted, sold his entire estate, and by collusion with his brother, Sampson Williams, invested the

proceeds in the purchase of certain outstanding notes of his brother, which were in the hands of one Gibbons. The notes, though bought by Lacey Williams, were nominally transferred to Margaret Williams, the insane wife of Sampson, the latter executing a trust-deed to secure them on a large tract of land owned by him, reciting in the instrument that the notes were the property of his wife. At the same time, and as part of the scheme, Sampson verbally gave to Lacey one hundred acres of the land and put him in possession of the same, though without any written evidence of title.

The notes remaining unpaid, as was contemplated by the brothers, a sale took place under their trust-deed, and the land was nominally sold to Margaret Williams, to whom the trustee executed a deed to the entire tract. Things remained in this condition, Lacey occupying the hundred acres assigned to him, and Sampson and wife the remainder, until Lacey, Sampson, and Margaret successively died, all of them childless and intestate. After the death of Margaret her heirs at law sold the land to defendant Hall, who now holds and occupies it.

But previous to the death of any of the parties, suit had been brought and judgment rendered in favor of the niece, Mary Ellen Green, suing by her guardian against Lacey Williams for more than $20,000. This judgment was rendered in the Circuit Court of the United States of the Southern District of Mississippi, sitting at Jackson. Hall's purchase from the heirs of Margaret Williams was some years subsequent to this judgment, which, however, had not then nor has it since been enrolled in Issaquena County, where the land is situated. Several executions were issued on the judgment, one of which was returned as having been levied on this land, but no sale of it was attempted. The judgment plaintiff having come of age and married, and despairing of recovering anything upon her judgment, at length, in 1879, sold it for a mere pittance to Mrs. Gibbons, the principal complainant in this bill. The bill, which was filed in 1880, more than seven years after the rendition of the judgment, seeks to reach and

subject the land to the payment of the judgment as being equitably the property of Lacey Williams' estate. It is not pretended that he ever owned the land in such way that it could be the subject of the lien either of the judgment or levy ; but the claim is that he had a beneficial interest in it, which a court of chancery can reach and subject. Manifestly this cannot be done as to the one hundred acres to which Lacey Williams never had any paper title or contract for title. Whatever might be the right of Lacey Williams' creditors against the estate of Sampson, because of the reception by the latter of the property of the former, in secreting it from his creditors, certainly there is no method by which the heirs of Margaret Williams, or their vendee Hall, can be compelled to carry out the parol agreement to convey the land, if such contract was ever made, which the bill does not aver.

As to the balance of the land covinously conveyed to Margaret Williams, and by her heirs sold to defendant Hall, there would ordinarily be a remedy ; but two considerations stand in the way in the present case. The judgment was never enrolled in the county where the land is situated, and the settled doctrine of this court is that judgments of the Federal courts have no lien in this State except in the counties in which they have been rendered or enrolled.

The land was not subject to a levy under a judgment against Lacey Williams, who had nothing but an equity in it ; but even if it had been, no levy was made upon it until after the purchase by defendant Hall. If, therefore the land had been the actual property of Lacey Williams, Hall would have gotten a perfect title by his purchase. Being equitable assets, however, the right to subject them did not depend upon the lien, which could not exist, but upon some complicity or knowledge upon the part of Hall of the fraud practised upon the judgment-creditor. There is an attempt to charge such knowledge, but it is insufficient. It is only averred, as to Hall, that he knew that Sampson Williams' wife was insane and that he owed her nothing. It is not charged that he knew of

the creditors' rights ; nor, indeed, that he knew that Lacey Williams was indebted at all, or that he was engaged in an attempt to defraud anybody.

But even if these charges had been made the bill cannot be maintained.    More than seven years intervened between the rendition of the judgment and the filing of the bill and consequenty it constituted no lien on any property of any sort.    It was valueless except as affording the basis for the issuance of executions or the bringing of a new suit.    *Buckner* v. *Pipes*, 56 Miss. 366.

Where the lien of a judgment is gone a court of equity will not lend its aid to enforce it, as to the legal estate of the debtor, then or previously owned, and by a parity of reasoning, where the time which will bar it as to the legal estate has elasped, the court will decline to lend its sanction to the attempt to reach equitable assets.    *Fleming* v. *Grafton*, 54 Miss. 79 ; *Partee* v. *Matthews*, 58 Miss. 140.

Decree reversed, demurrer sustained, and bill dismissed.